(No. 83-CC-9432—■■■■■)

ROBERT SANGOSTI, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 27, 1996.*

*Opinion on Rehearing September 4, 1997.*

DOUGLAS GRAHAM, Counsel for Claimant.

JAMES E. RYAN, Attorney General (THOMAS L. CIECKO, Assistant Attorney General, of counsel), for Respondent.

## OPINION

EPSTEIN, J.

This negligence claim was brought by Robert Sangosti, Claimant, against the Respondent's Department of Transportation ("IDOT") for damages from personal injuries sustained by him while operating his vehicle on a State highway in 1981. Claimant alleges that a dangerous condition—a substantial grade separation at the edge of the roadway—was negligently created or maintained by IDOT and, in addition, that IDOT negligently failed to provide appropriate warning signage of this condition, which caused Claimant to drive off of the roadway and to be unable to control his vehicle after partially leaving the roadway.

The single-vehicle accident case is before us for final decision after trial, which was held before Commissioner Rochford, following our denial of the Respondent's motion to dismiss, which was predicated on our exhaustion of alternative sources of recovery requirement (under section 25 of our Act [705 ILCS 505/25] and section 790.90 of our rules [74 Ill. Admin. Code section 790.90]). The Court denied that motion for lack of adequate supporting factual basis. Now, after trial, we must dismiss this claim on that same basis.

The facts adduced at trial, insofar as pertinent to our decision, are as follows.

### The Facts

On October 28, 1981, at approximately 1:30 a.m., Claimant Robert Sangosti was driving his vehicle after having exited Interstate 55 at the Highway 53 truck stop. Claimant attempted to return to I-55, but found that the entrance ramp was closed. Claimant then entered the frontage road eastbound in an attempt to reach the nearest entrance ramp to I-55.

Claimant testified that he was not familiar with the area and that he did not notice anything unusual about the roadway. He stated that the road was initially straight and that he was traveling at approximately 40 miles per hour. Claimant noticed that the road took a sharp turn to the left at approximately 50 to 100 feet in the distance. At the curve, he began turning and braking, slowing slightly, and noticed that the road had a "sharp edge" to it, but no shoulder appeared.

Claimant testified that he felt the two wheels of his vehicle go over the edge of the pavement, but was unsuccessful in his attempts to steer the vehicle back onto the roadway. The vehicle went "into a roll." Claimant was unable to recall anything else about the accident.

Claimant next remembered being in the grass and unable to stand up due to pain. He crawled to a nearby weigh station for help and the police and an ambulance arrived at the scene approximately ten minutes later. Claimant was transported and admitted to Edward Hospital in Naperville where he was x-rayed and diagnosed, and treated for a concussion, scalp laceration, and a fracture of the vertebra. Following four days at Edward Hospital, Claimant transferred himself to Christ Hospital where he remained for 13 days and was fitted for a back brace.

Claimant called one expert witness, a retired civil engineer, who testified *inter alia* that the accident was caused by the differential in height between the roadway and the shoulder (but in his prior deposition had acknowledged that Claimant may have panicked and attempted to return to the roadway too quickly). The expert, James Breclaw, also testified that the accident was caused by the Respondent's failure to provide sufficient traffic control devices to warn of the dangerous condition. However, he admitted in his deposition that it would be

the responsibility of a contractor working on the road to provide the appropriate traffic controls.

The Respondent's departmental report established that the roadway in question was within IDOT's maintenance jurisdiction, and acknowledged that there was a "deep" drop-off between the pavement and shoulder at the area where Claimant's vehicle lost control and left the roadway. The report also established that the maintenance of the subject roadway had been assumed by Peter J. Poulos & Sons, Inc., and Plote, Inc. under contract #34008 commencing August 26, 1980, and completing on December 1, 1981.

The terms of the contract specifically provided as follows:

"*Maintenance of Roadways*:

Beginning on the date when the Contractor begins work on this project he shall assume responsibility for normal maintenance of all existing roadways and shoulders within the limits of the improvement. This normal maintenance shall include all repair work deemed necessary by the engineer but shall *not* include snow removal operations. Traffic control and protection for this work will be provided as required by the Engineer."

## Exhaustion of Alternative Recovery Sources

The first, and dispositive, issue before this Court is whether Claimant failed to exhaust his remedies as to other potential sources of recovery, as required of all Claimants against the State by section 25 of our Act (705 ILCS 505/25) and section 790.90 of our rules (74 Ill. Admin. Code section 790.90); failure to do so is grounds for dismissal under section 790.60. Under our precedents, and indeed under the statute, a failure to exhaust an alternative recovery from another tortfeasor, unless excused, requires dismissal of the claim against the State in this Court. Claimants are required to exhaust all remedies; the Court cannot and does not allow discretion by Claimants to pick and

choose whom they wish to sue. *Burns v. State* (1990), 43 Ill. Ct. Cl. 323; *Boe v. State* (1984), 37 Ill. Ct. Cl. 72, 72-76.

In this case, the dispositive facts are clear and un-contradicted. IDOT had entered into a contract with Peter J. Poulos & Sons, Inc. and Plote, Inc. to perform construction work in the subject area during the relevant dates and times. The contract specifically provided that the contractor assumed all maintenance of the subject roadways in addition to all traffic control and protection for the area of construction. Indeed, the contractor had that duty, independent of the terms of the contract, once it assumed control of the public roadway. Thus, the contractor had a tort duty to members of the public driving on—or attempting to drive on—the subject way.

Although it is not dispositive, it is also clear that the Claimant apparently had knowledge of the construction contract, as Claimant's expert referred to the construction in his deposition testimony of August 1, 1990, and was knowledgeable about road construction practice.

Clearly, the Claimant should have sued the contractor who had contracted with the Respondent and assumed responsibility for the maintenance and traffic control necessary at the site of the accident. The Claimant could have and should have sued Peter J. Poulos & Sons, Inc. and Plote, Inc., and had the claim against Respondent placed on general continuance. Claimant failed to do so, and has offered no compelling reasons for his failure to exhaust this obvious source of recovery, which also happens to be the party directly responsible for the two conditions that Claimant alleges to have been the proximate cause of his one-car accident.

For the foregoing reasons, this claim is denied and dismissed with prejudice.

## OPINION ON REHEARING

EPSTEIN, J.

This 1983 personal injury claim, arising out of a 1981 one-car accident on the I-55 frontage road, is back before us on the Claimant's petition for rehearing, which asks us to reverse our dismissal of this claim for failure to exhaust relief against a State contractor. Once again we must observe that both parties to this 13-year-old case are before us with unclean procedural hands. We revisit this case primarily because of the parties' failure adequately to present it in the first instance.

### The Rehearing Issues

Following trial, we dismissed this claim for failure to exhaust alternative sources of recovery due to the Claimant's nonpursuit of the contractor who had contractual maintenance responsibility over the roadway where the Claimant's accident took place. We had declined to dismiss this claim on that basis before trial, and rejected the Respondent's motion to dismiss because the facts were unclear. (Order of May 17, 1995.) Trial seemingly did not cure that. The dismissal became mandatory under the exhaustion of remedies requirement of our statute and rule (section 25 of the Court of Claims Act [705 ILCS 505/25] and section 790.90, Court of Claims Regulations [74 Ill. Admin. Code section 790.90]), when the contractor's jurisdiction was undisputed and because of the Claimant's theory of liability, which rests on allegedly defective roadway conditions and the absence of appropriate warning signage, which were contractual responsibilities of the contractor within its construction-area responsibility.

Following our decision, the Claimant asked us to reconsider the exhaustion dismissal on the basis that the accident occurred outside, not inside, the construction area

that was the contractor's responsibility. After determining that the record was still unclear on this point, we directed the parties to provide supplemental submissions on this geographical issue. (Order of February 7, 1997.) The Court did so in the interests of justice, and despite the Claimant's failure clearly to address this point or to provide clear evidence even in his petition for rehearing.

In response to our order, and to its credit, the Respondent acknowledged that "the site of the Claimant's accident was not within the area of the State's contractor's maintenance responsibility under the governing contract" (Response to Petition for Rehearing). This admitted fact moots the exhaustion issue as to the contractor. We therefore vacate our opinion and order of November 27, 1996, and now turn to the merits of this claim.

### The Facts on the Liability Issue

In the early-morning hours of October 28, 1981, Claimant Robert Sangosti was driving southwest-bound on Interstate 55 ("I-55"). At approximately 1:30 a.m. he exited I-55 to stop at the Highway 53 truck stop. After his stop, Claimant attempted to return to I-55 but found that the entrance ramp was closed due to construction. He was advised to use the frontage road northeast-bound to reach the nearest southwest I-55 entrance. Thus Claimant turned onto the frontage road to reach the next entrance ramp.

Claimant testified that he was not familiar with the area and that he did not notice anything unusual about the roadway, although he acknowledged observing construction conditions in the area of the Highway 53 interchange. Claimant testified that he noticed that the road had a "sharp edge" to it and that he did not see a shoulder. He stated that the frontage road was initially straight

but made a left turn approximately 50-100 feet after his entry. Claimant testified that he was traveling at approximately 40 miles per hour when he reached the curve, that he braked but that he went off the pavement (on the outside of the curve). According to the Claimant, when he felt the two wheels of his vehicle go over the edge of the pavement, he tried but failed to steer the vehicle back onto the roadway. The vehicle went "into a roll" and undisputedly rolled over. The Claimant woke up injured some distance from the roadway.

Claimant was unable to recall anything else about the accident. He next remembered being in the grass and unable to stand up due to pain. He crawled to a nearby weigh station for help. The police and an ambulance arrived at the scene approximately ten minutes later. Claimant was transported and admitted to Edward Hospital in Naperville where he was x-rayed and diagnosed, and treated for a concussion, scalp laceration, and a fracture of the vertebra. Following four days at Edward Hospital, Claimant transferred himself to Christ Hospital where he remained for thirteen days and he was fitted for a back brace.

There were no other occurrence witnesses at trial, and as Claimant was alone in the vehicle at the time of the accident, it appears that no other occurrence witnesses exist.

### The Liability Issue

Claimant's theory of the case, as pleaded, was that the roadway was dangerous due to the "drop between the surface of the road pavement and the level of the shoulder" (Complaint, par. 5(a)), due to holes on the road surface (*id.*, par. 5(c)) and due to IDOT's failure to warn motorists of the "dangerous condition of the roadway and shoulder" (*id.*, par. 5(d)). At trial, Claimant injected an

additional notion that the Respondent was negligent in failing to provide signage warnings of the left-hand turn on the frontage road, which seems gratuitous in light of his testimony that he saw the curve in any event.

The principal testimony as to liability was Claimant's expert witness, James Breclaw, a retired civil engineer. He testified to the danger of the height differential between the roadway and the shoulder, and noted that a difference in height between the shoulder and the pavement always poses a potential danger, and that a safe, acceptable height difference depends upon the individual driver and the circumstances. Although the witness acknowledged that he is not an expert on traffic control, he relied extensively on a Texas Transportation Institute report, "Pavement Edges and Vehicle Stability: A Basis for Maintenance Guidelines," published in September, 1982, as authoritative on the issue, although he had not read it.

Breclaw testified that the accident was caused by the height differential between the roadway and the shoulder. He was partly impeached by his prior deposition testimony in which he acknowledged that Claimant may have panicked and tried to return to the roadway too quickly. Breclaw further testified that the accident was caused by the Respondent's failure to provide sufficient traffic control devices to warn of the dangerous condition. Although references were made to a six-inch differential between the roadway and a shoulder, no clear testimony as to the differential in height was ever presented by either party.

After detailed review of this record, the Court is persuaded that the Respondent less than fully met its responsibilities to provide reasonable warning of the abnormal and substandard conditions of the frontage road. We are also persuaded by the Claimant's own testimony that at least some of this was known or apparent to the Claimant

when he entered the frontage road in search of the next entrance ramp, or immediately after entering it. He was aware of construction in the immediate area; that was the reason he had to detour to the next upstream entrance in the first place; and he acknowledged seeing that something appeared abnormal about the shoulders, which at a minimum should have put him on notice to be especially careful.

However, we find no evidence in the record to connect the defective conditions—the roadway holes (which are unevidenced), the shoulder drop-off (which is evidenced but unquantified), and the lack of warning signs (about which there is ambiguity)—with the occurrence of this one-car accident.

The Claimant's and his expert's testimony attempts to show, and does somewhat show, that the Claimant's vehicle's roll-over was caused at least partly by the shoulder drop-off. That, however, goes to the extent of the accident, and arguably to the degree of damages. But that evidence does not address the threshold issue of why the accident occurred in the first place, i.e., why the Claimant drove his vehicle half off the road and dropped onto the shoulder. That threshold, but crucial, issue is unaddressed by Claimant's evidence. And this is a critical gap.

What does appear—and clearly—in this record is that (i) Claimant entered a left-turn at 40 miles per hour (having necessarily accelerated to this speed in 50-100 feet, according to his own testimony) and (ii) went off the road on the outside of the turn and dropped two wheels off the roadway, and (iii) turned over while attempting to turn back onto the road, i.e., while turning his wheels left towards the road-edge which was receding *away* from his direction of travel.

From this undisputed evidence, we must draw two conclusions: (1) the only cause of the initiation of this accident—the vehicle leaving the roadway—is unexplained except for the Claimant's speed and his failure to steer within the turn; (2) the rollover was caused in some part by the Claimant's unsuccessful efforts to turn back onto the roadway.

Although on this record, it is difficult to ascribe proportions of causation to each of these, it is clear to this Court that the Claimant fell far short of meeting his burden of establishing that any of the alleged negligent acts or deficient conditions was the proximate cause of this accident. There is simply no factual basis in this case on which we might conclude, let alone a basis that persuades us, that the Respondent is at all responsible for Claimant's departure from the safety of the paved roadway. Without satisfying that link in the causal chain, there can be no liability on IDOT—even assuming IDOT's responsibility and even assuming it was aware of or had notice of these allegedly defective road conditions.

We are constrained to come to this conclusion notwithstanding our sympathy to the Claimant's argument that the accident was exacerbated by the shoulder drop-off, which may well have turned a simple skid into a serious and near-fatal incident. Our sympathy for Claimant's injuries, which were serious, and our appreciation for his half-argument against the unacceptable performance of IDOT in this instance, do not provide a legal basis for this Court to make an award to Claimant, which we must deny.

For the foregoing reasons, we must deny liability and deny this claim on the merits. Given our conclusion as to liability on the causation issue, we need not and do not address the other elements of Claimant's negligence claim.

For the foregoing reasons it is hereby ordered: (1) The opinion and order of November 27, 1996 is vacated; (2) This claim is denied, and forever barred.